JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant's Motion to Dismiss (DE 25); Defendant's Motion to Transfer Venue (DE 26)

## I. INTRODUCTION

On November 6, 2019, Plaintiff PennyMac Loan Services, LLC ("Plaintiff" or "PennyMac") filed a Complaint against Defendant Black Knight, Inc. ("Defendant" or "Black Knight") in this Court alleging five claims: (1) monopolization under section 2 of the Sherman Act (15 U.S.C. § 2); (2) attempted monopolization under section 2 of the Sherman Act (15 U.S.C. § 2); (3) violation of the Cartwright Act (Bus. & Prof. Code §§ 16270 *et seq.*); (4) violation of unfair competition law (Bus. & Prof. Code §§ 17200 *et seq.*); and (5) common law unfair competition.

Presently before the Court are Defendant's Motion to Dismiss and Motion to Transfer Venue. For the following reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue and **transfers** this case to the Middle District of Florida. The Court **DENIES as moot** Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND

PennyMac is a residential mortgage lender/servicer. Black Knight sells products and services for the residential mortgage-servicing industry. Black Knight owns a mortgage-loan servicing platform called MSP, which enables mortgage-loan servicers like PennyMac to track and store loan data and transactions in the servicer's portfolio and to manage servicing activities.

PennyMac's Complaint alleges that "MSP is an antiquated system that, through Black Knight's anticompetitive practices, maintains a dominant market position of over 62% of the first-lien Mortgage Servicing Platform Market." (Compl. ¶ 14, ECF No. 1.) According to PennyMac, Black Knight knows that its off-the-shelf MSP system is not sufficient for many of its customers. Black Knight therefore allows and encourages "customers with IT capabilities to develop their own software to integrate their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

systems…with MSP." (*Id.* ¶ 55.) Once customers have developed these MSP-integrated products, there is little incentive to switch to a competitor's product. Moreover, the licensing agreements that customers sign with Black Knight to use MSP contain provisions which broadly assert ownership over any client-generated software programs that have been developed using client data processed through MSP. This means that customers who create their own software and then extricate from Black Knight run the risk of being sued for misappropriating Black Knight's intellectual property.

In 2008, PennyMac began contracting with Fidelity Information Services, Inc. ("Fidelity") to use MSP. Under the terms of their agreement (the "Master Agreement"), PennyMac agreed not to use Black Knight's software to develop or test an imitation software system to replace MSP. The Master Agreement also contained a forum-selection clause, which provided as follows:

> This Agreement shall be considered as entered into in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida. Any action or proceeding based upon this Agreement or arising out of its performance shall be brought in a federal or state court of competent jurisdiction in Florida. The parties submit to and accept, for themselves and in respect of their property, generally and unconditionally, the non-exclusive jurisdiction of those courts. The parties waive any claim that the State of Florida is not a convenient forum or the proper venue for any such suit, action or proceeding.

(Def.'s Request for Judicial Notice ("RJN"), Ex. A ¶ 32, ECF No. 26-2.) In November 2016, PennyMac and Fidelity's successor, Black Knight Technology Solutions, LLC ("BKST"),[1] signed an addendum to the Master Agreement. (Def.'s RJN, Ex. B, ECF No. 26-3.)

As PennyMac grew as a company, the weaknesses of MSP became increasingly more pronounced. As a result, PennyMac invested in and developed software of its own. In April 2018, PennyMac informed Black Knight that it did not intend to renew its license to use MSP after October 31, 2019 and that PennyMac intended to supplant MSP with its own proprietary platform. PennyMac also told Black Knight that it wanted to continue licensing several other applications offered by Black Knight. Black Knight declined to negotiate these renewals except under onerous terms and terminated use of the applications PennyMac sought to continue using.

---

[1] Black Knight Technology Solutions, LLC changed its name to BKST in July 2019.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

On November 5, 2019, Black Knight filed a lawsuit against PennyMac in Florida state court (the "Florida Action"), alleging that PennyMac used its confidential access to MSP to develop its own competing software. The next day, PennyMac filed this case against Black Knight.

### III.   JUDICIAL STANDARD

28 U.S.C. § 1404(a) provides a mechanism for the enforcement of a valid forum-selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Section 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).[2]

Typically, a court resolving a § 1404(a) motion to transfer venue will consider public and private interest factors to determine whether those factors weigh in favor of transferring the case. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in [several] ways." *Atl. Marine*, 571 U.S. at 64.

First, when there is a valid forum-selection clause, "the plaintiff's choice of forum merits no weight." *Id.* Generally, a plaintiff can "select whatever forum they consider most advantageous[.]" *Id.* "But when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64–65.

Second, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 62. Although the "court may consider factors relating to the public interest…those factors will rarely defeat a transfer motion." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018). "The practical result is that a forum-selection clause 'should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

---

[2] The parties do not dispute that the present action could have been brought in Florida, where the Florida Action is pending.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

Finally, a court resolving a motion to enforce a forum-selection clause need not accept the allegations of the complaint as true and may consider facts outside the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

## IV.   DISCUSSION

Black Knight asks the Court to enforce the forum-selection clause in the Master Agreement and transfer this case to the Middle District of Florida where the Florida Action is pending. PennyMac counters that transfer is inappropriate because (1) Black Knight lacks standing to enforce the forum-selection clause, (2) the forum-selection clause does not encompass the claims in this case, and (3) the public interest factors weigh against transfer. The Court addresses each argument in turn.

### A.   Can Defendant Enforce the Forum-Selection Clause?

The parties to the Master Agreement are PennyMac and Fidelity/BKST. BKST is a wholly-owned subsidiary of Black Knight. Black Knight contends that it can enforce the forum-selection clause even though it is not a signatory to the agreement. PennyMac disagrees.

The Ninth Circuit has recognized that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)); *TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("[i]t is not unreasonable or unjust to enforce [a forum-selection] clause even though some of [the defendants] did not sign the agreement."). A court may enforce a forum-selection clause against non-parties to a contract so long as "the alleged conduct of the non-parties is *closely related* to the contractual relationship." *Manetti-Farrow*, 858 F.2d at 514 n.5 (emphasis added); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). Conduct may be "closely related to the contractual relationship" when the non-party is "part of the larger contractual relationship" between the parties. *Holland*, 485 F.3d at 456.

Here, the alleged conduct of Black Knight is closely related to the contractual relationship between PennyMac and Fidelity/BKST. The crux of PennyMac's Complaint is that Black Knight engages in anticompetitive practices in order to maintain a monopoly in the mortgage-servicing platform market. According to PennyMac, MSP is an antiquated product which is often insufficient for customers by itself. Black Knight knows this and allows and encourages customers to develop their own software to integrate with MSP. At the same time, Black Knight incorporates contractual provisions in its licensing agreements which claim ownership over any client-generated software programs that have been developed using client data processed through MSP. The practical result is that customers do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

create their own competing products for fear that they will be sued by Black Knight for breaching the terms of the licensing agreement.

PennyMac itself alleges that it had little option but to license MSP due to the lack of competitors in the market. However, because of the deficiencies with MSP, PennyMac was forced to develop additional software to support its needs. Ultimately, PennyMac informed Black Knight that it did not intend to renew its license to use MSP and that PennyMac would replace MSP with its own proprietary platform. PennyMac sought continue licensing several other applications offered by Black Knight. However, Black Knight declined to negotiate these renewals except under onerous terms.

The allegations of the Complaint compel the conclusion that PennyMac's relationship with Black Knight "arose out of and [is] intimately related to its relationship with" BKST. *Holland*, 485 F.3d at 456 n.2. PennyMac alleges that Black Knight uses contractual provisions to stifle competition. Here, the Master Agreement—and Black Knight's response to PennyMac's decision not to renew it—embody the anticompetitive practices that PennyMac complains of. Although PennyMac asserts that the Complaint "does not contain a single direct reference to the Master Agreement," it contains numerous indirect references to the agreement, as well as to BKST. PennyMac may argue that its contractual relationship with BKST is wholly distinct from its allegations against Black Knight, but PennyMac itself conflates Black Knight and BKST in the Complaint.[3] Further, the Complaint repeatedly emphasizes PennyMac's position as a *customer* but PennyMac was never a customer of Black Knight—it was a customer of BKST. (*See* Reply at 5, ECF No. 32.) Accordingly, the Court concludes that Black Knight's alleged conduct is "closely related to the contractual relationship" between PennyMac and BKST. *Manetti-Farrow*, 858 F.2d at 514 n.5. But-for the Master Agreement, PennyMac and Black Knight would have no relationship. Black Knight may therefore invoke the forum-selection clause.[4]

---

[3] For example, the Complaint alleges that (1) PennyMac informed "*Black Knight* that it did not intend to renew its license to use MSP"; (2) PennyMac sought to continue licensing other Black Knight applications, "but *Black Knight* declined to negotiate such renewals except under onerous terms"; and (3) PennyMac formally "notified *Black Knight* that PennyMac would not be renewing its MSP license[.]" (Compl. ¶ 32 (emphasis added).)

[4] PennyMac also argues that Black Knight cannot enforce the forum-selection clause because section 16 of the Master Agreement provides that "[n]either the terms of this Agreement nor any performance hereunder shall be construed to create any rights in any person other than the parties to this Agreement." (Opp. at 4, ECF No. 30.) But Black Knight points out that PennyMac has not quoted the entirety of section 16, which also says "[t]his agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns." (Reply at 4.) Unfortunately, neither party has provided the Court with the entirety of section 16. But suffice to say that, based on the submitted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

**B. Does the Forum-Selection Clause Apply to Plaintiff's Claims?**

The next issue is whether the forum-selection clause encompasses PennyMac's claims against Black Knight. By its terms, the forum-selection clause applies to "[a]ny action or proceeding based upon th[e] Agreement or arising out of its performance[.]" (Def.'s RJN, Ex. A ¶ 32.)

*1. The Scope and Meaning of the Forum-Selection Clause*

The scope of a forum-selection clause depends upon the language used in the clause. *Ronlake v. US–Reports, Inc.*, 2012 WL 393614, at *3–4 (E.D. Cal. Feb. 6, 2012). The Ninth Circuit has held that "forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself.'" *Advanced China Healthcare*, 901 F.3d at 1086 (quoting *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011)). By contrast, forum-selection clauses that cover disputes "relating to" an agreement are interpreted more broadly and may "apply to any disputes that reference the agreement or have some logical or causal connection to the agreement." *Id.* (internal quotation marks omitted); *Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352, at *5 (N.D. Cal. Apr. 10, 2015) ("As a general matter, forum selection clauses covering disputes 'arising out of' a contract are narrower than those covering disputes 'arising out of or relating to' a contract.")

Here, the forum-selection clause covers disputes (1) based upon the agreement, or (2) arising out of the agreement's performance. The Court considers each phrase in turn.

*a. "Based Upon the Agreement"*

Black Knight contends that "based upon" is synonymous with "relating to"—a phrase which the Ninth Circuit has interpreted broadly. PennyMac, on the other hand, asserts that "based upon" equates to "arising out of."

The Court begins with the plain meaning of the phrase "based upon." Black's Law Dictionary defines the verb "base" to mean "to place on a foundation; to ground" or "[t]o use (something) as the thing from which something else is developed." Black's Law Dictionary (11th ed. 2019). Thus, the plain meaning of an action "based upon the agreement" is an action grounded in the Master Agreement. (*See* Opp. at 9.) In the context of this agreement, "based upon" must confer a broader meaning than the

---

materials, PennyMac has not met its burden to show that the express terms of the Master Agreement bar enforcement by Black Knight.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

phrase "arising under the agreement." Such a conclusion is compelled by the fact that to find otherwise would render the "based upon" language a surplusage. (*See* Reply at 6.) Were the Court to adopt PennyMac's argument that "based upon" equates to "arising out of," this would mean that the clause should be interpreted to read "arising out of the agreement or arising out of its performance." Such a construction is inappropriate under general principles of contract construction. *See Turlock Irrigation Dist. v. Fed. Energy Regulatory Comm'n*, 903 F.3d 862, 872 (9th Cir. 2018) ("We will not interpret a contract so as to render one of its provisions meaningless.")

        b.    *"Arising Out of its Performance"*

Black Knight asserts that the phrase "arising out of the agreement's performance" should be interpreted more broadly than the phrase "arising out of the contract." PennyMac counters that "arising out of its performance" should be interpreted narrowly in accordance with the Ninth Circuit's holding in *Advanced China Healthcare*.

The Court disagrees that the phrase "arising out of the agreement's performance" is broader than the phrase "arising out of the contract." In *Advanced China Healthcare*, the Ninth Circuit held that the phrase "arising out of…this Agreement" encompassed disputes relating to the performance of the agreement. *Advanced China Healthcare*, 901 F.3d at 1085–86. This compels the conclusion that the phrase "arising out of the agreement's performance" is narrower than the phrase "arising out of the contract." This conclusion is unaltered by Black Knight's cited cases, each of which discuss forum-selection clauses with significantly broader language. *See Quarum v. Mitchell Int'l, Inc.*, No. 3:18-CV-02159-SB, 2019 WL 1937606, at *3 (D. Or. Apr. 12, 2019) ("[a]ny legal suit ... arising out of or based upon this Agreement, or the transactions contemplated"); *Guenther v. Crosscheck Inc.*, No. C09-01106 WHA, 2009 WL 1248107, at *1 (N.D. Cal. Apr. 30, 2009) ("any action arising out of the negotiation, execution or performance of the terms and conditions of this agreement").

        2.    <u>*Whether PennyMac's Claims are Based Upon the Agreement or Arise out of its Performance*</u>

The Court next turns to whether PennyMac's antitrust claims are based upon the agreement or arise out of its performance.

The Court concludes that PennyMac's claims are based upon the Master Agreement. As set forth above, the crux of PennyMac's Complaint is that Black Knight engages in anticompetitive practices to ensure the dominance of MSP and other products. These anticompetitive practices include the use of overly broad and onerous contract provisions in licensing agreements, such as those present in the Master Agreement. Indeed, PennyMac would not have experienced Black Knight's anticompetitive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

practices were it not for the Master Agreement. PennyMac's claims are therefore grounded in the Master Agreement and its purportedly anticompetitive terms.

PennyMac's claims are also based upon the Master Agreement insofar as the Complaint alleges that Black Knight retaliated against PennyMac for not renewing its MSP license. In the Complaint, PennyMac alleges that it informed Black Knight that it would not be renewing its MSP license but that it intended to continue licensing other Black Knight products. In response, Black Knight unilaterally terminated PennyMac's license to use those other products—the goal being to make PennyMac incur unnecessary costs to build its own replacement applications or find replacement vendors to provide such applications. Black Knight did this even though it caused Black Knight to suffer a financial loss from the loss of licensing revenues. The thrust of these allegations is that Black Knight engaged in anticompetitive conduct as a direct result of PennyMac's refusal to renew the Master Agreement which allowed it to license MSP. These allegations bolster the conclusion that PennyMac's claims are grounded in the Master Agreement.

### C. Do Extraordinary Circumstances Warrant Denial of the Motion to Transfer?

In *Atlantic Marine*, the Supreme Court held that a valid forum-selection clause should be enforced except "under extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 571 U.S. at 62. But *Atlantic Marine* provides little guidance regarding what constitutes "extraordinary circumstances." *Advanced China Healthcare*, 901 F.3d at 1088. The Ninth Circuit has held that a forum-selection clause is controlling unless the plaintiff can make a strong showing that: (1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court. *Id.*; *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

Here, PennyMac does not address any of these three factors. Accordingly, the Court concludes that PennyMac has not met its "heavy burden" burden to show that there are extraordinary circumstances which warrant denial of the motion to transfer. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009).

### D. Do the Public-Interest Factors Make Transfer Inappropriate?

Having determined that the forum-selection clause is valid and enforceable, the final question is whether the public-interest factors weigh against transfer. The public-interest factors "will rarely defeat a transfer motion[.]" *Atl. Marine*, 571 U.S. at 64.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

PennyMac devotes only a footnote to this issue, asserting that "even assuming *arguendo* application of the venue provision, PennyMac's choice of forum is *still* inappropriate because of public interest factors[.]" (Opp. at 14 n.9.) PennyMac does not elaborate on which public-interest factors weigh against transfer. Accordingly, the Court holds that the public-interest factors do not make transfer inappropriate.

### E. Conclusion

The Court concludes that the forum-selection clause is valid and enforceable under the principles set forth in *Atlantic Marine*. As an aside, the Court notes that neither party has briefed the issue of whether the forum-selection clause here is mandatory or permissive. "The prevailing rule is...that where venue is specified with mandatory language the clause will be enforced" according to the principles set forth in *Atlantic Marine. Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (citations omitted); *Mitchell v. 1Force Gov't Sols., LLC*, No. CV 18-7612 PSG (SKX), 2018 WL 6977476, at *3 (C.D. Cal. Nov. 29, 2018). Meanwhile, "courts confronting permissive clauses generally apply the normal § 1404 and forum non conveniens factors to determine whether transfer is appropriate." *Mitchell*, 2018 WL 6977476, at *3. These factors include (1) the location where the agreement was negotiated and executed, (2) the state most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts in the chosen forum relating to the cause of action, (6) differences in litigation costs between the two forums, (7) availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) ease of access to the sources of proof, (9) the presence of a permissive forum selection clause, (10) the public policy of the forum state, (11) relative court congestion, (12) local interest in having localized controversies resolved at home, and (13) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

Black Knight's Motion appears to rest on the assumption that the forum-selection clause is mandatory. Because PennyMac has not challenged this assumption, the Court deems the argument that the clause is permissive waived for purposes of this Motion to Transfer. In any event, the Court has taken its own look at the factors and finds that they favor transferring the case to Florida. First, the presence of a permissive forum-selection clause is a "significant factor" favoring transfer. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1166 (C.D. Cal. 2015). Second, the differences in litigation costs and relative court congestion weigh in favor of transfer to Florida. Finally—more broadly—the interests of justice weigh in favor of transfer given that the Florida Action is already pending and involves overlapping facts, issues, and evidence. Litigating these cases in a single forum would spare the parties and witnesses the time and expense of travelling to two different forums. Transfer will therefore serve the convenience of the parties and witnesses.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-09526-RGK-JEM | Date | February 13, 2020 |
|---|---|---|---|
| Title | *PennyMac Loan Services, LLC v. Black Knight, Inc. et al* | | |

### V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Transfer Venue and **transfers** this action to the Middle District of Florida. The Court **DENIES as moot** Defendant's Motion to Dismiss.

**IT IS SO ORDERED.**

                                                                                                    :
                                            Initials of Preparer                     _____